


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GREGORY LYNN NORWOOD, Petitioner, v. MIKE KNOWLES, et al., Respondents. | Case No. CV 99-07315 SVW (AN) REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. Before the Court is Respondents' Motion for Reconsideration ("Motion") of the Court's finding that this action was timely. For the reasons reported below, it is recommended that the Motion be granted and this action dismissed with prejudice because it is untimely.

## I. BACKGROUND

### A. Prior Proceedings

Petitioner Gregory Lynn Norwood ("Petitioner") challenges his December 9, 1994 conviction by jury trial in Los Angeles County Superior Court (case No. SA120316) of first degree murder and second degree robbery, in violation of CAL. PENAL CODE §§

187(a) and 211, respectively. The jury further found true allegations that the murder occurred during the commission of the robbery, within the meaning of CAL. PENAL CODE § 190.2(a)(17), and that Petitioner personally used a firearm (machine gun), within the meaning of CAL. PENAL CODE §§ 1203.06(a)(1), and 12022.5(a). [Reporter's Transcript on Appeal ("RT") at 1986-92; Clerk's Transcript ("CT") at 191-93, 504.A, 504.B, 505, 563.] Additionally, the jury found true the allegation that, in the commission of the crimes, a principal in the offense was armed with a firearm, within the meaning of CAL. PENAL CODE § 12022(a)(1). [*Id.*] In a bifurcated proceeding, the trial court found true allegations that Petitioner had suffered three prior serious felony convictions within the meaning of CAL. PENAL CODE § 667(a), and one prior prison term within the meaning of CAL. PENAL CODE § 667.5(b). [RT at 2007; CT at 194, 560.] Petitioner was sentenced to state prison for life without the possibility of parole, plus nineteen years. [RT at 2154-61; CT at 561, 563.]

Petitioner appealed his judgment of conviction to the California Court of Appeal, Second Appellate District, Division One (case no. B091925), and that court affirmed his conviction on April 9, 1997. [Motion to Dismiss ("MTD"), Ex. E.] The Supreme Court of California denied review on July 16, 1997 (case no. S061278). [*Id.*, Exs. F, G.]

Nearly eleven months later, on June 10, 1998, Petitioner, proceeding in *pro se*, constructively[1/] filed a habeas petition with the Los Angeles County Superior Court. [Respondents' Lodgment of 5/5/2000.] That petition was denied the same day it was accepted for filing, on June 26, 1998. [*Id.* at 13.] Approximately six months (181 days) later, on December 24, 1998, he filed a habeas petition with the California Court of

---

[1/] Pursuant to the "mailbox rule," a *pro se* prisoner's habeas petition is deemed to be filed on the date the prisoner delivers the petition to prison authorities for mailing to the clerk. *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379 (1988); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001). The mailbox rule also applies to *pro se* state habeas petitions. *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). The proof of service attached to Petitioner's first state habeas petition indicates he delivered it to prison authorities on June 10, 1998. [Respondents' Lodgment of 5/5/2000 at 12.]

Appeal (case no. B128168), and that petition was denied without comment on January 7, 1999.[2] [MTD, Ex. H.] On February 3, 1999, Petitioner constructively filed his next state habeas petition in the California Supreme Court (case no. S076488), and that petition was denied without comment on May 26, 1999. [*Id.*, Exs. I, J.]

After Petitioner filed the current action, he returned to state court one more time, constructively filing a new habeas petition with the California Supreme Court on August 12, 2003 (case no. S118946). [Return to Third Amended Petition ("Return"), Ex. K.] That petition was denied on June 9, 2004, with citations to *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509 (1993); and *In re Robbins*, 18 Cal.4th 770, 780, 77 Cal.Rptr.2d 153 (1998). [*Id.*, Ex. L.]

**B. Pending Proceedings**

Petitioner now seeks to challenge his conviction in this Court by way of a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, raising seven claims for relief. [Third Amended Petition ("TAP") at 6-7, 9-23.] The original petition was constructively filed on May 31, 1999, and was summarily dismissed without prejudice because Petitioner failed to comply with the instructions on the Petition form and failed to set forth facts showing he had exhausted his available state remedies. [8/2/99 Order (AN).] Petitioner subsequently filed a First Amended Petition ("FAP"). Respondents then filed the MTD on the grounds that the FAP was untimely and contained an unexhausted claim. By Memorandum and Order, the Court found the FAP was not time-barred, but that Petitioner had failed to exhaust his state remedies with respect to one of the claims raised in the FAP. The court dismissed the

[2] Petitioner alleges he constructively filed that petition four days earlier, on December 20, 1998 [Opposition at 2], but has not provided the Court with a copy of the petition or any other proof that he is entitled to the benefit of an earlier constructive filing date. Regardless, even assuming without finding the truth of his assertion, the following analysis demonstrates the earlier date would have no effect on the Court's conclusion that this action is untimely.

FAP without prejudice to Petitioner's right to file a second amended petition deleting the unexhausted claim. [7/28/00 Order (AN).] Petitioner then filed a Second Amended Petition ("SAP").

Respondents filed a Return to the SAP addressing the merits, and Petitioner filed a Traverse and Supplemental Traverse. Then, on July 24, 2003, due to subsequent pronouncements by the Ninth Circuit, the Court issued an Order giving Petitioner the opportunity to have his deleted claim reinstated for a determination by the District Judge as to whether that claim was unexhausted. [07/24/03 Order (AN).] The Order also gave Petitioner the option of requesting a stay of the exhausted claims while he returned to state court to complete the exhaustion of the unexhausted claim raised in the FAP. [*Id.*] Petitioner formally requested the "stay and abey" option, and the Court granted his request. [8/15/03 Order (AN).] After raising the claim in a habeas petition before the California Supreme Court, Petitioner filed the pending TAP on July 12, 2004. Respondents filed a new Return, arguing that all the claims fail on the merits, and that Petitioner's seventh claim is also procedurally defaulted. [Return at 6-25.] Petitioner then filed a Traverse in response.

On June 1, 2006, Respondents filed the pending Motion for reconsideration of the Court's order finding this action to be timely, based on the United States Supreme Court's recent decision in *Evans v. Chavis*, --- U.S. ---, 126 S.Ct. 846, 852-54 (2006), which further clarified the law of "gap" tolling for federal courts determining whether a federal habeas action was timely filed pursuant to the relevant statute of limitations. Petitioner has filed his Opposition to the Motion and the matter now stands submitted.

## II. ANALYSIS

### A. Reconsideration of the Timeliness Issue

Federal courts are permitted to consider the timeliness of a state prisoner's habeas petition *sua sponte*, even after the respondent has answered the petition. *Day v. McDonough*, --- U.S. ---, ---, 126 S.Ct. 1675, 1682-84 (2006). Before acting on its own initiative, however, the Court must accord the parties fair notice and an opportunity to

present arguments on the issue. *Id.* at 1684. "Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id.* (quoting *Granberry v. Greer*, 481 U.S. 129, 136, 107 S.Ct. 1671 (1987). In this instance, the Court's finds reconsideration of the timeliness issue to be appropriate. First, the issue has not, in fact, been raised on the Court's own initiative, but by Respondents' Motion for reconsideration. Second, both parties have been given fair notice and have responded with arguments. Third, nothing in the record suggests re-visitation of the limitations issue by Respondents was the result of a "strategic" withholding of an argument for later use or that Petitioner was otherwise "significantly prejudiced." *Id.* at 1684-85. In fact, Respondents *did* raise a statute of limitations defense in this case and have only reasserted it based on intervening United States Supreme Court precedent that was unavailable when the defense was initially raised.

To the extent Petitioner argues that applying intervening law to this action amounts to improper retroactivity [Opposition at 2-3]; *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989), his contention fails. First, *Teague* only applies where the a new constitutional rule of criminal procedure is announced or applied on collateral review. *Teague*, 489 U.S. at 310. *Chavis* governs civil federal habeas corpus appeals under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), not rules of criminal procedure. *Cf., United States v. Sood*, 969 F.2d 774, 776 (9th Cir. 1992) (distinguishing *Teague* on the basis that *Teague* "dealt with the retroactive application of a new constitutional rule of criminal procedure, not with the application of decisions affecting the substance of criminal laws").

Petitioner's argument that *Chavis* should not be applied retroactively is otherwise foreclosed by *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 89, 113 S.Ct. 2510 (1993) ("we hold that this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision."); *see also Hostler*

*v. Groves*, 912 F.2d 1158, 1161 (9th Cir. 1990) ("[A] fundamental principle of our jurisprudence is that a court will apply the law as it exists when rendering its decision.").

The timeliness issue is properly before the Court.

**B. Statute of Limitations**

The AEDPA imposes a one-year statute of limitations upon a state prisoner seeking federal habeas review of his or her underlying state conviction and sentence. 28 U.S.C. § 2244(d)(1). AEDPA's one-year limitations period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

As discussed above, Petitioner was convicted on December 9, 1994, the Court of Appeal affirmed his conviction on April 9, 1997, and the California Supreme Court denied review on July 16, 1997. Petitioner did not seek review with the United States Supreme Court, therefore, for purposes of AEDPA's limitation period, his judgment of conviction became final ninety days later, on October 14, 1997. *See Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (the period of "direct review" in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for writ of certiorari from the United States Supreme Court). AEDPA's one-year statute of limitations period then started to run the next day, on October 15, 1997, and ended on October 15, 1998. 28 U.S.C. § 2244(d)(1)(A); *see also Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the statute of limitations begins to run on the day following the day of the triggering event pursuant to FED. R. CIV. P. 6(a)). Petitioner did not constructively initiate the current action until May 31, 1999 -- 228 days (more than seven months) after the statute had run. Therefore, the pending TAP is time-barred unless Petitioner is entitled to statutory or equitable tolling, or an alternate start date to the AEDPA limitations period under 28 U.S.C. § 2244(d)(1).

**C. Statutory Tolling**

AEDPA's one-year limitations period may be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application is "pending" until it has achieved final resolution through the state's post-conviction procedures. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S.Ct. 2134 (2002). In the absence of undue delay, a petitioner in California is normally entitled to "one full round" of collateral review in state court free of federal interference. *Id.* at 220-22; *Welch v. Carey*, 350 F.3d 1079, 1082 (9th Cir. 2003); *Delhomme v. Ramirez*, 340 F.3d 817, 819 (9th Cir. 2003). "One full round" generally means that the statute of limitations is tolled from the time a California prisoner files his first state habeas petition until the California Supreme Court rejects his final collateral challenge ("gap" tolling). *Saffold*, 536 U.S. at 219-20; *see also Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied*, 529 U.S. 1104, 120 S.Ct. 1846 (2000); *see also* CAL. CT. R. 29.4(b)(2)(C); *Corjasso v. Ayers*, 278 F.3d 874, 880 n.1 (9th Cir. 2002) (orders of the California Supreme Court denying habeas petitions are final upon filing).

However, a state petition is only "pending" if filed within a "reasonable time." *Saffold*, 536 U.S. at 221; *Chavis*, 126 S.Ct. at 849 (citing *Saffold*). Where a state court's order clearly shows the habeas petition was denied on timeliness grounds, "that [is] the end of the matter" and the untimely petition is not considered to be "properly filed" for purposes of §2244(d)(2). *Saffold*, 536 U.S. at 226; *Pace v. Diguglielmo*, 544 U.S. 408, 414, 125 S.Ct. 1807 (2005).

Further, the United States Supreme Court recently held that, in the absence of a clear direction or explanation from the California Supreme Court as to what constitutes a "reasonable time" (or the legislative enactment of a determinate time limit), federal courts must conduct a case-by-case determination of whether the subject filing delay "was made within what California would consider a 'reasonable time.'" *Chavis*, 126 S.Ct. at 852-53. In *Chavis*, the Supreme Court applied the foregoing principles and found that "a totally unexplained, hence unjustified, delay of at least six months . . . is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court. (citation omitted). It is far longer than the

10-day period California gives a losing party to file a notice of appeal in the California Supreme Court (citation omitted). We have found no authority suggesting, nor found any convincing reason to believe, that California would consider an unjustified or unexplained 6-month filing delay 'reasonable.' Nor do we see how an unexplained delay of this magnitude could fall within the scope of the federal statutory word 'pending' as interpreted in *Saffold*." *Id.* at 854.

Petitioner was entitled to tolling during the pendency of his first state habeas petition in the trial court, from June 10-26, 1998. Given 17 days of statutory tolling, the limitations deadline was extended from October 15, 1998, to November 1, 1998.

As discussed above, Petitioner waited 181 days after his first state habeas petition was denied by the trial court to file his second state habeas petition in the Court of Appeal. Based upon *Chavis*, the Court finds this unjustified[3] delay is unreasonable. It is clearly "longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court," and "far longer than the 10-day period California gives a losing party to file a notice of appeal in the California Supreme Court." *See id.* at 853-54 (further, "in *Saffold*, we held that timely filings in California (as elsewhere) fell within the federal tolling provision *on the assumption* that California law in this respect did not differ significantly from the law of other states, i.e., that California's "reasonable time" standard would not lead to filing delays substantially longer than those in States with determinate timeliness rules")[4]; *see also* CAL. CT. R. 28(e)(1) (allowing only ten days to file a petition for review of a decision by the Court of Appeal, including habeas corpus decisions). Thus, the Court finds a 181-day

---

[3] The Court finds Petitioner's sole, conclusory attempt to justify the 181-day delay lacks merit for the reasons discussed in Section E, below.

[4] Petitioner's argument that this Court should apply Justice Stevens's "six month presumption" of timeliness is rejected because it runs contrary to the majority decision of the *Chavis* Court. *Chavis*, 126 S.Ct. at 858-59.

unjustified delay constitutes an unreasonable delay and the interval between Petitioner's first and second state habeas petitions cannot be tolled.[5]

Further, because Petitioner did not file another state habeas petition until December 24, 1998, 53 days after the extended limitations period expired, he is not entitled to any further statutory tolling. In order to qualify for statutory tolling, the prisoner's state habeas petition must be constructively filed before, not after, the expiration of AEDPA's one-year limitations period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001), *cert. denied*, 538 U.S. 949, 123 S.Ct. 1627 (2003); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir. 2001) (state petition filed a month-and-a-half after limitations period expired did not warrant statutory tolling). Petitioner's last three state habeas petitions were filed after the limitations period expired.

Despite receiving the statutory tolling to which he is entitled, Petitioner is still time barred and the TAP should be dismissed with prejudice.

**D. Alternative Start of the Statute of Limitations**

**1. State-Created Impediment**

In rare instances, the AEDPA provides that its one-year limitations period shall run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that the statute of limitations was delayed by a state-created impediment requires a showing of a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Petitioner has not shown he is entitled to relief under this provision.

---

[5] The *Chavis* holding specifically rebuts Petitioner's argument that the Court of Appeal's silent denial "implies the petition was timely." [Opposition at 2-3.]; *see also Chavis*, 126 S.Ct. at 852 ("In the absence of . . . clear indication that a particular request for appellate review was timely or untimely . . . the federal court must decide whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what California would consider a "reasonable time."")

**2. Newly Recognized Constitutional Right**

The AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, then the one-year limitations period begins to run on the date which the new right was initially recognized by the United States Supreme Court. 28 U.S.C. § 2244(d)(1)(C). Petitioner has not alleged or demonstrated that he is entitled to relief under this provision.

**3. Discovery of Factual Predicate**

The AEDPA also provides that, in certain cases, its one-year limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner has not alleged or demonstrated that he is entitled to relief based upon a late discovery of the factual predicate.

**E. Equitable Tolling**

"[E]quitable tolling is justified in few cases," and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace, supra*, 125 S.Ct. at 1814. Petitioner makes the following vague contention, which the Court construes as an argument for equitable tolling:

> At the time of the interval between the Superior Court[']s denial of Petitioner[']s habeas corpus [petition] and his filing [in the Court of Appeal], he was given a job with working hours sometimes conflicting with that day[']s legal library access[.] [A]lso there were library closures, cell moves with property [lost] and misplaced[,] and temporary lockdowns that occurred that caused the delay of filing . . ."

[Opposition at 2.]

Petitioner has not established that he meets either of the *Pace* elements for equitable tolling. Prison officials typically provide prison law libraries or legal assistants to ensure that prisoners "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356, 116 S.Ct. 2174 (1996). However, prison officials of necessity must regulate the time, manner and place in which library facilities and legal assistant programs are used. *See Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985). Not surprisingly, lockdowns, placement in administrative segregation/solitary confinement, and other common restrictions on access to the law library and legal assistant programs, generally do not qualify as "extraordinary circumstances." *Lindo v. Lefever*, 193 F.Supp.2d 659, 663 (E.D.N.Y. 2002). There is no due process violation so long as an inmate has the basic capability of presenting his claims to the courts, irrespective of the "capability of turning pages in a law library." *Lewis*, 518 U.S. at 356-57. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (internal quotations omitted). "[M]eaningful access to the courts is the touchstone . . ." *Id.*

Petitioner's argument for equitable tolling lacks merit because he has not adequately shown or explained how he was prevented from initiating the current action on time. He merely makes unsupported contentions that he could not access the library during limited periods for various reasons, but has failed to allege or show when or how long he was denied access, as well as whether he made genuine efforts to gain access and was denied. *The prisoner has the burden* of demonstrating that external forces, rather than his own lack of diligence, account for his failure to file a timely claim. *Stillman, supra*, 319 F.3d at 1202. Petitioner has fallen grossly short of meeting that burden here.

///

Further, even if Petitioner had shown he was denied access to the law library at various times and for various reasons during the relevant period, he has failed to meet his burden of establishing the alleged limited access made timely filing *impossible*. Aside from his perfunctory, unsupported allegations, he has not shown why he needed access to the law library to timely file a federal habeas petition, or otherwise how the alleged "library closures, cell moves with property [lost] and misplaced[,] and temporary lockdowns" created an insurmountable impediment.

To recap, Petitioner is not entitled to equitable tolling because he has failed to satisfy either of the *Pace* elements. Petitioner has not met his burden to show he was reasonably diligent in pursuing federal habeas relief throughout the time that the AEDPA limitations period was running, nor has he shown he was prevented from filing a timely petition because of extraordinary circumstances.

Accordingly, the pending TAP is barred by the statute of limitations.

**III. RECOMMENDATION**

In accordance with the foregoing, IT IS RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Respondents' Motion, and (3) directing that judgment be entered dismissing this action with prejudice.

Dated: Sept. 6, 2006

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE